**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREA MANTIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-224 |
| ) | Judge Nora Barry Fischer |
| MOSHE JOURNO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

I. INTRODUCTION

Plaintiff Andrea Mantia brings claims against Defendant Moshe Journo for assault, battery, and intentional infliction of emotional distress after she was raped by Journo on September 6, 2004. (Docket No. 1 at 2). Mantia sued in 2019, but the matter was stayed for nearly four years while criminal proceedings were pending against Journo in state court. (Docket Nos. 1; 13). After Journo's criminal conviction and unsuccessful appeal, the case was reopened and the parties engaged in settlement negotiations. (Docket Nos. 18; 39). Counsel for the parties reached a purported settlement agreement and informed the Court as such in a Joint Status Report on October 5, 2023. (Docket No. 46). But Journo, who is incarcerated, did not attend any of the mediation caucuses and had not yet reviewed the agreement. (Docket No. 50 at ¶ 12). When he did, he refused to sign it and stated that he did not wish to settle. (Docket No. 50 ¶ 16). Because Journo did not perform under the alleged settlement agreement, Mantia moved to enforce the settlement. (Docket No. 48).

Presently before the Court are Mantia's Motion to Enforce Settlement, (Docket No. 48); Journo's Response, (Docket No. 50); Mantia's Reply, (Docket No. 52); and Journo's Sur-Reply, (Docket No. 54). Mantia seeks to enforce an alleged settlement agreement reported to the Court in the October 5th Joint Status Report signed by Attorney Stephen Stallings for the Plaintiff and Attorney Joseph Hudak for the Defendant. (Docket No. 48 at ¶¶ 13–14, 18). Attorney Hudak, on behalf of Journo, counters that the Defendant does not wish to settle the matter and that Attorney Stallings was "over-eager to announce a settlement," despite knowing that Journo had not yet seen or signed the settlement agreement. (Docket No. 54 at 1). After careful consideration of the parties' positions and for the following reasons, Mantia's motion [48] is DENIED.

## II. BACKGROUND

On September 6, 2004, Journo, then thirty-nine years old, raped and sexually assaulted Mantia, who was fifteen at the time. *Commonwealth v. Journo*, 288 A.3d 531, 533 (Pa. Super. Ct. 2023). After posting bond, Journo fled the country to Israel. *Id.* Pennsylvania sought extradition of Journo, and he was returned to the United States in February 2019. *Id.* That same month, Mantia sued Journo in this Court for battery, assault, and intentional infliction of emotional distress. (Docket No. 1).

The Court stayed this matter on July 24, 2019, pending resolution of Journo's criminal case. (Docket No. 13). A jury convicted him of rape and related offenses, and Journo was sentenced to a term of incarceration on July 12, 2021. *Journo*, 288 A.3d at 533–34. Journo appealed his sentence, and it was affirmed by the Pennsylvania Superior Court on January 11, 2023. *Id.* at 539. The Court granted a Joint Motion to Reopen on May 5, 2023. (Docket No. 18).

The Court held a case management conference on June 7, 2023. (Docket No. 26). After resolving a question of subject matter jurisdiction, (Docket No. 38), the Court referred the case to mediation with Tina O. Miller, Esq. on July 20, 2023. (Docket No. 39). One month later, Attorney

Miller reported to the Court that "parties and counsel have participated and made substantial progress in their efforts to resolve the case," but acknowledged that "Defendant's incarceration has contributed to complexities in scheduling." (Docket No. 41). According to Attorney Hudak, Journo did not participate in the mediation caucuses. (Docket No. 50 at ¶ 12).

In a Joint Status Report submitted on September 5th, the parties informed the Court that they had "reached an agreement in principle subject to execution of the papers" and "request[ed] an additional thirty (30) days to continue the mediation process and execute the written settlement agreement," (Docket No. 42); which the Court granted, (Docket No. 43). Then, on October 5th, the parties filed a Joint Status Report signed by Attorney Stallings and Attorney Hudak announcing that a settlement agreement had been reached and that counsel was "awaiting receipt of the executed settlement agreement from defendant." (Docket No. 46). The Court administratively closed the matter. (Docket No. 47).

Counsel never received the executed settlement agreement from Journo. According to Attorney Hudak, he mailed the settlement agreement to Journo in prison and instructed him to sign it. (Docket No. 50 at ¶ 16). When he did not receive a signed agreement in return, Hudak contacted Journo. (*Id.*). Journo "stated that he did not wish to settle and did not wish for [Attorney Hudak] to continue to represent him." (*Id.*).

Attorney Hudak notified the Defendant and mediator on November 20, 2023, that Journo would not agree to the settlement offer, or indeed any settlement at all. (Docket No. 48 at ¶ 16). Several weeks later, Defendant filed the instant Motion to Enforce Settlement. (Docket No. 48). As noted, the Motion has been fully briefed and is now ripe for disposition.

III. LEGAL STANDARDS

A motion to enforce settlement is analyzed under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact

as to the validity of the settlement agreement. *Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 & n. 5 (3d Cir. 1991). "This is not a mere coincidence. The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same—both deprive a party of his right to be heard in the litigation." *Id.* Therefore, the Court must "view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The Court "shall grant summary [enforcement] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to [enforcement] as a matter of law." Fed. R. Civ. P. 56(a). *See also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) ("Material facts are those that affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." (internal marks and citations omitted)). If there are material disputes between the parties as to the existence or terms of a settlement agreement, the Court should afford the parties an evidentiary hearing before summarily enforcing a settlement agreement. *Tedesco Mfg. Co., Inc. v. Honeywell Intern., Inc.,* 371 F. App'x 316, 319 (3d Cir. 2010) (citing *Saudi Basic Ind. Corp. v. Exxon Corp.*, 364 F.3d 106, 113 (3d Cir. 2004)).

IV. DISCUSSION

The Court has carefully considered the parties' arguments in light of the relevant precedent and the facts of record and concludes that Mantia has failed to meet her burden to demonstrate that there are no genuine disputes of material fact and that she is entitled to enforcement of a settlement agreement allegedly reached during mediation. (*See* Docket Nos. 48 50; 52; 54). The Court's rationale follows.

Mantia argues that the purported oral settlement agreement is evidenced by the October 5th Joint Status Report signed by both Attorney Hudek and Attorney Stallings informing the Court

that an agreement had been reached.  (Docket Nos. 48 at ¶ 18; 52 at 2).  Attorney Hudek responds on behalf of Journo that there was no "meeting of the minds" between him and his client and that Attorney Stallings was "over-eager" in submitting the Joint Status Report before Journo could review and sign the settlement agreement.  (Docket No. 54 at 1, 8).

The validity and enforceability of a settlement agreement is governed by state contract law. *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (first citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009); then citing *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999)).  In Pennsylvania, "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."  *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986).  *See also Long v. TowLine River Serv., Inc.*, 568 F. Supp. 3d 535, 549 (W.D. Pa. Oct. 26, 2021) (explaining that a settlement agreement requires "an offer and acceptance of the compromise and a meeting of the minds as to the essential terms of the agreement." (citation omitted)). "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1971).

"[W]hile the settlement agreement need not be reduced to writing, an attorney must still have authority to settle their client's case."  *King v. Driscoll*, 307 A.3d 134, 138 (Pa. Super. Ct. 2023) (citing *Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 122 (Pa. Cmmw. Ct. 2020), appeal denied, 256 A.3d 420 (Pa. 2021)). And that authority must be expressly given. *See Myers v. AutoZoners, LLC*, No. CV 16-1312, 2017 WL 6316586, at *7 (W.D. Pa. Dec. 11, 2017) ("the law in Pennsylvania 'is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement" (quoting *Reutzel v. Douglas*, 870

A.2d 787, 789–90 (Pa. 2005)). "The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." *Reutzel*, 870 A.2d at 790. (citing *Starling v. W. Erie Ave. Bldg. & Loan Ass'n*, 3 A.2d 387, 388 (Pa. 1939) ("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client")).

"[E]xpress authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf." *Id.* at 790 (citing Restatement (Second) of Agency § 7 cmt. c (1958)). "An attorney's mere assumption of his client's express authority does not satisfy this demanding legal standard." *Myers*, 2017 WL 6316586, at *10 (citing *Kennedy v. Glover*, 2013 WL 11255024, *5 (Pa. Super. 2013)). Nor does "[t]he ordinary employment of an attorney to represent a client with respect to litigation . . .confer upon the attorney the implied or apparent authority to bind the client to a settlement." *Long v. TowLine River Serv.*, 568 F. Supp. 3d 535, 551 (W.D. Pa. 2021) (quoting *Baribault*, 236 A.3d at 122) (citations omitted). *See also Tiernan*, 923 F.2d at 1033 ("Express authority . . . does not arise merely from the fact of representation, but must be the result of explicit instructions regarding settlement." (citations omitted)).

The Court finds that there is no evidence that Journo explicitly authorized Attorney Hudak to enter into the settlement agreement. First, it is not enough that Hudak "did legitimately, believe that the Defendant would sign the settlement agreement," (Docket No. 50 ¶ 12), or that he "expressly approved the filing of the Joint Status Report" informing the Court that settlement had been reached, (Docket No. 48 ¶ 14). Attorney Hudak's "mere assumption" of express authority does not make it so. *See Myers*, 2017 WL 6316586, at *10 (citing *Kennedy v. Glover*, 2013 WL 11255024, *5 (Pa. Super. 2013)). Second, though Attorney Hudak and Journo communicated

while settlement negotiations were ongoing, (Docket No. 50 at ¶¶ 12, 18); there is no evidence that Journo was present for or actively participated in the mediation caucuses, (*id.* ¶ 12). *But see, e.g.*, *Hatchigian v. Quaglia*, Nos. 1519 EDA 2017, 1525 EDA 2017, 1528 EDA 2017, 2018 WL 2093688, at *3 (Pa. Super Ct. Apr. 5, 2017) (finding that counsel had express authority to settle when his client was seated beside him during negotiations); *Thai Duc Luu v. Thao Thi Nguyen*, No. 2113 EDA 2013; 2014 WL 10919550, at *3 (Pa. Super. Ct. June 24, 2014) (concluding that parties had given express authority to counsel to settle when the attorneys "discuss[ed] various settlement proposals and counteroffers with their respective clients" who were waiting in a nearby conference room during negotiations). Finally, even if the Court were to conclude that Journo authorized Attorney Hudak to settle the matter, there is no evidence that he authorized counsel to enter into the written agreement attached to Mantia's Motion or that *this* agreement met certain conditions preapproved by Journo. *See, e.g.*, *Kennedy v. Glover*, No. 1316 WDA 2012, 2013 WL 11255024, at *5 (Pa. Super. Ct. Aug 13, 2013) (finding that a party had not given express authority to his counsel to settle when "the record [was] devoid of evidence regarding what, if anything, [the party] told [his attorney]"). *But see, e.g.*, *Garba v. Fresh Express, Inc.*, Civ. A. No. 1:12-CV-2497, 2014 WL 4976269, at *5 (M.D. Pa. Sept. 30, 2014) (finding that attorney had express authority to settle when he communicated regularly with the plaintiff during settlement negotiations, obtained a settlement value greater than plaintiff's minimum threshold, and obtained express approval to settle for the given value).

To the contrary, the evidence supports the opposite conclusion—the deal was contingent on Journo's execution of the written agreement and he explicitly withheld authorization by immediately declining to sign the agreement. "Express authority will *not* be found where the client has repudiated his or her counsel's authority in a timely manner after settlement." *Vangjeli v.*

*Banks*, 668 F. Supp. 3d 400, 407 (E.D. Pa. 2023) (citing *Yarnall v. Yorkshire Worsted Mills*, 87 A.2d 192, 193 (Pa. 1952)). Journo repudiated the agreement at his first opportunity when Attorney Hudak called him in prison to inquire why the document had not yet been signed. (Docket No. 50 at ¶ 16). This was not a case in which the Defendant approved of an agreement and then rescinded after experiencing "buyer's remorse." *See, e.g.*, *Harris v. Hayward Lab'ys., Inc.*, Civ. No. 3:19-CV-530, 2019 WL 11721123, at *6 (M.D. Pa. Nov. 6, 2019).

In addition, counsel acknowledged in the September 5th Joint Status Report that they had "reached an agreement in principle subject to execution of the papers" and the later October 5th Joint Status Report advised that they were "awaiting receipt of the executed settlement agreement from defendant." (Docket Nos. 42; 46). The settlement agreement was never executed because Journo never approved it and refused to sign it. As such, the other contingencies noted in the settlement agreement, including the execution of same by Mantia and both counsel, court approval of a consent judgment, and Journo's financial disclosures were also not completed. (Docket No. 48-2). Accordingly, the record plainly demonstrates that an enforceable settlement agreement was not reached in this case because there has not been an offer, acceptance, and meeting of the minds as to all of the essential terms. *See Long*, 568 F. Supp. 3d at 549.

V.  CONCLUSION

Based on the foregoing, Mantia has presented no genuine issue of material fact regarding the settlement authority granted to Attorney Hudak by Journo, and there is no evidence that Journo gave Attorney Hudak explicit authority to enter into the purported settlement agreement. Accordingly, Ms. Mantia's Motion to Enforce Settlement [48] is denied. An appropriate Order follows.

*s/Nora Barry Fischer*

Nora Barry Fischer
Senior U.S. District Judge

Dated: March 11, 2024

cc/ecf: Counsel of record